The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Take a seat, please. So, is Judge Traxler on the phone? Yes, sir. Judge Traxler, is he able to communicate? Should be. Yes, I can hear you, Judge Agee. All right, well, good morning, Judge Traxler. We'll go ahead and commence. Good morning. Our first case is the United States v. Kim. Ms. Liguori? Good morning. May it please the Court, I'm Michelle Liguori from Ellison Winters for the appellant, Jong Kim. There is no dispute between Mr. Kim and the government that Rwan v. United States changed the law in this circuit. Before Rwan, to convict a medical doctor under Section 841, the government was not required to prove that he knowingly or intentionally acted in an unauthorized manner. Mr. Kim entered his guilty pleas in December 2021, about six months before Rwan was decided. At the end of his first change of plea hearing, he raised the issue that was at the heart of Rwan. He told the Court he had not acted willfully, and he said, I'm not guilty. After consulting with his counsel, Mr. Kim did decide to plead guilty, but he pled guilty to the elements under the law at the time. He did not admit in his plea agreement or at the plea hearing that he knowingly or intentionally acted in an unauthorized manner. Well, he said he read the indictment, and he understood it, and he was pleading guilty to it. And the indictment says, while acting and intending to act outside the usual course of professional practice is not for a legitimate medical purpose. What's wrong with that? He did say that he read the indictment, but the District Court told him the elements of the offense in a way that was inconsistent with the indictment. But he was pleading guilty to the indictment. He said he read it. He said he understood it. He said he was guilty, and the indictment appears to fully comply with Rwan. Well, respectfully, I don't think the indictment does fully comply with Rwan. Rwan says that the knowingly and intentionally mental state applies to the act of distribution and also to- But don't you think that the facts that was offered to support the plea of guilty pretty much satisfy every element required? It's hard to imagine a physician practicing medicine the way he did. I mean, they were fired from the hospital. He had 30 to 40 patients a day. He didn't examine some of them. He didn't do any kind of medical examination. He didn't have any medical devices in his house. Don't you think, factually, that would support the plea of guilty? The evidence that the government set forth at the change of plea hearing would be objective evidence that the government could rely on for an inference. I think it would be overwhelming. Well, the evidence in this case is not significantly different than the evidence in the Rwan case and the Kahn case, where the 10th Circuit and the 11th Circuit concluded that if the jury didn't specifically find the intent required under Rwan, that those convictions had to be vacated. And so the question in this case would be what Mr. Kim's intent was. And to get relief in this appeal, our burden isn't to show that he likely would be acquitted at trial. The question is whether he would have put that issue to the jury at trial. And in the Kahn case, the court did note that the government pointed to voluminous trial testimony, it said, of circumstantial evidence of the defendant's intent. But the court in that case said that if the defendant disputed... But the instruction there was different than the instruction you have here. Isn't that correct? In the Kahn case, the instruction was different than the one here. In the Kahn case, the court actually did instruct the jury in a way that would be consistent. But the knowingly and intentionally discussion before both distribution and the act of being unauthorized. But the court there gave a good faith instruction that would apply to both the conspiracy and to the substantive counts. So the court reversed because it said that the jury heard the wrong mens rea requirement. Well, maybe they did it accidentally. But each one of these counts says, while acting and intending to act outside the usual course of professional practice and not for a legitimate medical purpose. Well, it does. It alleges that in the conjunctive. And typically, when something's alleged in the conjunctive, it gives the government the option to prove one or the other. And here in the plea agreement and at the change of plea hearing, the government didn't proceed under an intending to act theory. Well, under either standard, his practice of dispensing drugs to people that he didn't even examine or dispensing drugs to people who told him that he was selling it to other people. Is that in the course of regular practice? I think that there's there's certainly an argument that that's not in the course of regular practice. Strong argument. Development inquiry would be what was Mr. Kim, what did he know and what did he intend? And so he would have an opportunity to explain what what his what his intent was, what he engaged in, in the conduct that the government set forth at the change plea hearing. And he did. There is a it shows in the record that he disputed his. He raised that issue at his first change of plea hearing, and he also raised it at the sentencing when he told the court he didn't intend to act on lawfully. And so there is the record here does create a reasonable probability that if Mr. Kim had known that the government had to prove beyond a reasonable doubt that he knew and that he would have put that issue to the jury. And there's other there's other aspects of the record that show a reasonable probability that Mr. Kim would have made the decision to go to trial. So we talked about the contemporaneous evidence that he his comments at the change of plea hearing where he raised the very issue in Rwanda. Here is an issue of his mental state and that to him created questions in his mind about whether he was guilty. He raised that same point again at the end of the sentencing, maintaining again bringing up the issue of his mental state. The timing of Mr. Kim's guilty plea in this case also suggests that he likely would have gone to trial if he had known that the government would have to prove beyond a reasonable doubt that he knew and intended to act outside the scope of practice. His guilty pleas were entered on the eve of trial. He was indicted in December 2018 and he maintained the guilty plea for almost three years. During that time, he retained counsel and counsel got the case ready for trial. The parties twice filed proposed jury instructions in the case. The case was set for trial in February 2022, just weeks before he entered his guilty plea. And counsel disclosed a medical expert that would testify for the defense about pain treatment practices and that would testify that several of the prescriptions that issue here were objectively within the bounds of professional practice. It's also not uncommon for doctors... Based upon the presentation that he had? I mean, certainly the drugs were permissible to prescribe. When the presentation supports that, he would have had an expert that would have said, you can go ahead and dispense medication without even seeing the patient? I don't know that the expert... I don't know exactly what... The record doesn't indicate exactly what the expert would have testified, but I believe that the expert would have testified that... If it's not in the record, how can you represent what an expert would say? It's not in the joint appendix, Your Honor, but there was filed in the district court an expert disclosure by the defense in the case. And it indicated that the expert would testify about several of the prescriptions at issue here, that they were within the bounds of professional practice. And I do... Well, they had so many, I'm not sure several would make a difference. Well, the question would be... The expert would have testified that several were objectively within the bounds of professional practice. And the issue in this case would be what was Mr. Kim's intent with regard to all of... With regard to the accounts that were charged. And I don't believe the government's proffer showed that Mr. Kim was regularly giving prescriptions without seeing patients. There was certainly one instance where the government set forth that he had given a prescription. But he had 30 or 40 people there every day standing in line. In fact, there were so many people that the elementary school next door had to put a fence up. That's on the record, that there were 30 to 40 people. And that's not inconsistent with evidence in some of the other cases that the courts have reversed. So in the Ruan case, there were 100 people, 100 to 150 people visiting that clinic each day. And so facts similar to those here were not enough to make an error in instructing on the mens rea element, a harmless one. Mr. Kim also had personal characteristics that made it more likely that he would go to trial on these charges. Mr. Kim's a 76-year-old immigrant from South Korea. He went to medical school when he was almost 40 years old and became a doctor in his late 40s. At sentencing counsel... What does that have to do with whether or not he goes to trial? I think Mr. Kim's personal characteristics, we have to ask what would he have done? And counsel talked about how... There's nothing other than speculation about whether or not there's a likelihood that he would go to trial. I think we certainly have to offer more than speculation, but we have here. Mr. Kim's comments at his change of plea hearing, that he stopped the hearing because he wasn't sure if he was guilty of the offenses, and that he raised a specific issue that is at the heart of Ruan, the mental state. I think that shows that Mr. Kim may have made a different decision here if he had known about the elements of the offense. I think combined with him raising that issue again at sentencing shows that if he had known that the government had to prove that, he may have taken this case to trial. Counsel talked about Mr. Kim's strong sense of shame, which he said stemmed from his Korean culture, which made Mr. Kim very reluctant to enter a plea in this case. And the counsel talked about how he had several conversations with his children, which is what ultimately helped Mr. Kim decide to plead guilty. And so the record in this case overall paints a picture of someone who is very torn about pleading guilty, and that shows that if Mr. Kim had been informed of the mental state issue, which was something that was on his mind at the change of plea hearing, that he likely would have made a different decision. And I wanted to address also the government's argument with regard to the conspiracy count. So the government's brief says that because Mr. Kim admitted or because Mr. Kim pled guilty to the conspiracy count, that that establishes the mens rea required under Ruan. And there's two problems with this argument. The first is that it's inconsistent with this court's decision in Hurwitz. Hurwitz held that an error in jury instructions on the mens rea for an 841 charge rendered a related conspiracy count invalid. Hurwitz involved a good faith instruction that will the defense ask for a good faith instruction, and the court did not give it in that case. And the court held that even though the jury convicted on conspiracy, the failure to give a good faith instruction affected both the conspiracy count and the substantive counts, and it vacated all of them. And that discussion is in footnote 10 of the court's opinion in Hurwitz. The Tenth Circuit reached the same conclusion in the Kahn case. It held that the failure to correctly advise on the mens rea affected both the conspiracy count and the substantive counts. And these decisions make sense because to be guilty of a conspiracy, the defendant has to reach an agreement with the specific intent that the crime be committed. Well, in this case, when you had several people that came in and purchased large amounts of drugs from him for distribution to other people, and he knew it, don't you think that's sufficient to support a conspiracy? I think it depends on what his mental state is and what he specifically knew. And I think he didn't admit that. When the court told Mr. Kim what the government would have to prove for a conspiracy, it didn't say anything about an unlawful purpose or an intent to act unlawfully. And that makes this case different. The supporting facts introduced by the prosecution indicated that he had distributed drugs to people knowing it was going to be redistributed to someone else with no presentation, no examination. You don't think that would support a conspiracy? Well, the question is, did Mr. Kim admit to that? The record doesn't show that Mr. Kim admitted to entering an agreement that he knew was unlawful. And that makes this case different than the cases that the government submitted at supplemental authority where the court did affirm a conspiracy conviction because the court instructed the jury in those cases that to find the defendant guilty of conspiracy, it had to find that he agreed to an unlawful plan and that he agreed to further the plan's unlawful purpose. In this case, I'd like to address briefly the Farrell case from the Eastern District of Texas, which was a guilty plea case, and that it did involve a conspiracy count. It was a sole conspiracy count. And in that case, there actually was no Rouen error. The court instructed the defendant that to find him guilty of the conspiracy, it had to show that he knowingly and intentionally or that he entered an agreement to knowingly and intentionally distribute in an unauthorized manner. So the court's discussion of this 841 underlying crime there was consistent with Rouen. And the court also did tell the defendant that to convict him, the government would have to show that he knew the unlawful purpose of the agreement and joined in it with the intent to further it. So the Farrell case is very different than this case. Also, Mr. Farrell pled guilty the day he was charged. And here Mr. Kim maintains his plea of not guilty for three years. And we would contend because the record in this case does show a reasonable probability that if Mr. Kim had been advised of the mens rea requirement under Rouen, that he would have made a different decision and would have decided to put the charges in this case to a jury. And so we're asking the court to vacate his convictions. All right. Thank you very much. You've got some rebuttal time, Mr. Casper. We'll hear from you. Please, the court, Andrew Casper of the United States. I'm going to focus on the Rouen issue. I'm happy to answer any questions about the allocation issue if the court has them. So the government has put forth three bases on which the court may affirm the convictions, the conspiracy to unlawfully distribute mental substances convictions, as well as the substantive offenses. Can you move a little closer to the mic? It's hard to hear. I apologize. Is that better? So the first basis is that defendant was properly advised of the mens rea requirement recognized by the Supreme Court in Rouen. As the court is aware, Rouen said that the knowing or intentional mens rea requirement applies to both the action of dispensing and to the act of dispensing outside the scope of the usual course of medical practice or not for legitimate medical purpose. Here, as the court has already noted, the second superseding indictment as to the substantive offenses, charged the defendant while acting and intending to act outside the usual course of professional practice and not for legitimate medical purpose to dispense these controlled substances. The United States argues that that is consistent with what Rouen asked. The court made sure the defendant read and understood the indictment, and the defendant said he did. That's a JA-62. It's also really important to note that when the court accepted the defendant's guilty plea, the court asked the defendant, are you pleading guilty to the specified counts of the second superseding indictment? So he pled guilty to the language that I just read of while acting and intending to act. Additionally, the defendant's plea agreement expressly said that he was pleading guilty to the specified offenses in the second superseding indictment. So, again, he is pleading guilty to acting and intending to act outside the usual course of medical practice. Entirely consistent with Rouen. Additionally, the court's oral instruction to the defendant as to what the offense was, was that the government must bear the burden of showing beyond a reasonable doubt that you prescribed, dispensed, or distributed oxycodone. You acted knowingly and intentionally, and you did that outside the usual course of professional practice and other than for a legitimate medical purpose. I think it's really useful to compare that statement where that refers directly to the preceding phrase, you acted knowingly and intentionally. Which page of the appendix are you reading from? That's on JA-73, Your Honor. I think it's useful to compare that with Rouen. So on page 1297, the court states, the district court enumerated the elements of a Section 841A charge. The defendant dispensed the controlled substance. Defendant did so knowingly and intentionally. And the defendant did not have authorization. Grammatically, the quote did so phrase links the mens rea element to the preceding element describing the actus reas of dispensing the controlled substance. But not the except as authorized exception. That's precisely the opposite of what happened in our case, where the you did that language links the usual course of medical professional practice element with acted knowingly and intelligently. Additionally, there's no indication in this case that there was any shifting of the burden to the government. There's been some suggestion of that in the defendant's brief. The court repeatedly advised defendant that the burden lied with the government, never suggested it lied anywhere else. J.A. 63, for example, says, and at the trial, there would be no burden on you. The burden rests on the shoulders of the government to prove you guilty beyond a reasonable doubt. So we would say that that all complied exactly what Rouen intended. The second basis for which this court can affirm defendant's guilty plea is his plea to the conspiracy charge. This court has held in the McFadden case, which is a 23 effort to 17 to page 224, that the emission of an essential element from a jury instruction is harmless. Well, when the emitted element overlaps with an element, another count of conviction. Here, and just to be clear, your honors, this is a plain error case to center to center is an error. And the government is not conceding that there is error. But to the extent that there is error, it would be a plain error case because the defendant did not object. A trial here, the court, he did not object at trial to what exactly he did. He did not object to the make a Rouen objection, saying that he should have been advised as to the where what the knowledge requirement applied to in terms of the elements of the offense. At pages, this is in the plea agreement at page 197 to 198 of the J.A. Defendant pleaded guilty to, quote, forming an agreement to prescribe a quantity of oxycodone outside the usual course of professional practice and not for legitimate medical purpose. And that defendant knew the purpose of this agreement or conspiracy. To the extent that there's an argument that conspiracy does not require a specific intent as to the underlying offense. I would direct the court. To this court's decision, the United States versus Vincent, which is an 852 F333. The elements of conspiracy are that two or more persons agreed to commit a substantive offense and that at some time during the conspiracy, the defendant had knowledge of the criminal objective of the agreement and willfully join the conspiracy with the intent to further its unlawful purpose. Here, the court used almost identical language. This is a J.A. page 73. You formed an agreement to distribute, prescribe and dispense and possess with an intent to distribute oxycodone, hydrocodone and methadone as charged. And again, the charging document refers to acting and intending to act. And you knew the purpose of this agreement or conspiracy and that you knowingly and willfully participated in or became a part of it. So, again, the conspiracy count specifically complies with with the new requirements. And because he pled guilty to conspiracy charge, he had the requisite intent for the other charges. I would further note that all of these substantive offenses are within the temporal scope of the alleged conspiracy. And defendant has never argued that any particular substantive offense is not outside the scope of the conspiracy. You know, I would refer to this court on this on whether the conspiracy plea sort of rectifies any error. And again, the government concedes no error as to as to the advising on substantive offenses. The court's decision in Ajayi, which is in the Fifth Circuit. We find that even if idiosyncratic portions of the jury charge lacked clarity on Section 841A's mens rea requirement, the adequate Section 846 mens rea instruction filled in any gap by clearly requiring the jury find the defendant have understood the illegitimate nature of his conduct. And in the Rwan remand decision, consistent with the government's argument here, held that the conspiracy conviction was valid, even though that the substantive offenses were invalid because of the good faith instruction offered there. And then finally, and this is the third basis to affirm the conspiracy and substantive offenses, overwhelming evidence established defendant's guilt, including that they had the requisite mens rea. And so there's no prejudice to defendant's substantial rights if there was an error. And so here, the standard for plain error is a reasonable probability that but for the error, defendant would have not entered a guilty plea. This is a, quote, difficult to meet standard. The Supreme Court said in Puckett, look at the entire record. So that includes the PSR as well as the government's proffer of evidence, statement of facts at trial or at the plea hearing. And it's also really important to emphasize that the government can prove the knowledge requirement through circumstantial evidence. It does not have to have a statement from the defendant. I was acting outside the course of medical practice. The court Rwan says the scope of the doctor's prescribing authority remains, quote, tethered to objective criteria such as legitimate medical purpose and usual course of professional practice. So the quote, more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury will find that the government has carried its burden. Here, as Judge Hudson has already noted, there is a wealth of evidence as to substantive counts, as well as the conspiracy that defendant acted outside the scope of any sort of legitimate medical practice. And that sort of extreme disregard of standard medical practice is probative of his intent. So we know, for example, the defendant was previously employed by a hospital. He was counseled by his employer about engaging in improper prescribing of practice related to controlled substances, opioids in particular. And he resigned. He then operated, started his own practice originally out of his house. His his receptionist and practice operator, his co-conspirator in this case, Ms. Thompson, had no medical training, but was performing medical exams like taking blood pressure and vital signs. He would occasionally drug test patients, but they were not accurately recorded. And dispense prescriptions to patients who who tested positive for controlled substances. He also told somebody who worked in his office that it didn't matter where they file and who's who's filed. They put the results of these drug tests. His patients frequently spelled out marijuana. He prescribed opioids and compensate in combination with benzodiazepine drugs, particularly alprazolam, which is a known combination of abuse used by drug abusers to enhance the high. He had minimal medical equipment and did minimal medical examinations. All the transactions were in cash. There were two patient overdoses that were within days of receiving prescriptions from the defendant. And then as to particular days, the defendant, a confidential informant, went into the office, obtained prescriptions from from the defendant for opioids and other controlled substances. After minimal examination on certain days, he also purchased marijuana. In one case, he purchased it from defendants, co-conspirator, and then he gave the cash. This is all reported by the government to defendant for the marijuana purchase in a reasonable person. The doctor acting in the course of his legitimate medical practice would not sell marijuana at the same time as he is prescribing controlled substance. He also offered to the confidential informant to write prescriptions for opioids in exchange for as the interest on a loan. That would be his interest on the loan. He had customers perform work on his behalf in exchange for prescriptions. These are all conduct that is indicative that he had a lack of the requisite intent to prescribe properly intended. Am I also correct that he kept no medical records on any of his patients? My understanding, Your Honor, is that there were some records, but they were not extensive. And the issue, the reason why the hospital counseled him and his resignation is he was not keeping proper medical records as to his prescribing. And that appears, from what I've seen, also true of his own private practice. Yes. As I just mentioned, Your Honor, to the extent he had the drug testing, for example, he wasn't even filing it in the proper patient's files. He also issued a prescription for oxycodone for a patient who he didn't visit. It was the alleged father of a patient, and he went ahead and issued the prescription for that patient without seeing him. He issued a prescription for oxycodone to a patient who asked for an increase in his prescription so he could sell, quote, sell more pills on the street. So these are all indicative of not prescribing properly and intending not to prescribe properly. I'd also like to distinguish the Ruan and Khan cases on remand. I think a really important point of distinction between those cases and our cases is that those were jury trial cases where there was an instruction by the court as to good faith. In each of those cases, the good faith instruction said that if the defendant, if there's an absence of objective good faith, then the defendant could be held guilty. And the Supreme Court in the Ruan case said that that objective good faith instruction was problematic. And that objective good faith instruction in the Khan case in the Tenth Circuit tainted all, and there's actually two issues with Khan, but tainted all the convictions. And that was the basis why the court struck the convictions on remand. We have no good faith. From what I can tell in this record, in terms of what he was advised as to the elements of the offense, as to what he was pleading guilty, good faith does not appear in it. It's only the affirmative duty of the government to show his knowledge and the two acts that are required. So that's one point of distinction. It's very important. Second, in the Ruan case, as I said earlier, the language the court used indicated that the knowledge requirement only modified the act of dispensing. That is different from what was used here by both in the indictment and what the court said. Third, as to the Khan case, another key point of distinction is that the Tenth Circuit had a different pre-existing interpretation of the applicable regulation, where the usual course of professional practice was in the disjunctive with the not a legitimate medical purpose. And the usual course of professional practice was an independent basis to convict, and that was a purely objective standard. And that applied to both the conspiracy counts and to the substantive offenses. And so the conspiracy's object could have been an objective standard. That's not the case here, again, because we have alleged in the indictment a subjective standard, and that was what he pled guilty to. Finally, as to whether there's a reasonable probability that defendant would have not pled guilty, first, during his initial plea hearing when they did not move forward that day, the record indicates that he was feeling cultural shame. Not that he didn't know he was guilty, but he was cultural shame. He was not ready to plead guilty. That's not inconsistent with him actually knowing that he was guilty, which is what he said on the record to the court when he was asked. Another important point is, even to this day, he has never said that he will go to trial if he was properly instructed as to the knowledge requirement. In this court's decision in Massenburg, which is 564 F. 3rd 337 at page 343, this court declined to notice plain error when the defendant never alleged on appeal that he would have gone to trial in the absence of the error, which is what I understand to be the case here. Third, this is a really important point. There was a substantial benefit that accrued to him for pleading guilty. There was 34 counts in the indictment. The government dismissed 26 of those counts. And most importantly, the government agreed to stipulate that only the drug weight for the conviction counts could be used in calculating his sentence. That stipulation materially reduced the term he would have faced because, as you all know, drug weight is a decisive factor in determining a sentence under the guidelines. So he received a substantial benefit from this sentence. If the court has no further questions, I would just say we ask the court to refer him to the conviction. Judge Traxler, do you have any questions? No, I do not. Thank you, Judge Agee. Thank you, Mr. Kasper, Ms. LaGuerre. You've got some rebuttal time. To address a few of the points that the government made here, when Mr. Kim entered his guilty pleas, he pled guilty to the essential elements of the counts that were subject to his plea. He did not plead guilty to every allegation that was made in the indictment. And the elements that he was pleading guilty to are those that are set forth in his plea agreement. And the plea agreement does not include, as one of the elements of the offense, that he had a knowing and an intentional mens rea with regard to acting without authorization. And the district court, when it told him the elements of the offense, did not include a mens rea for the lack of authorization. And this court treats the lack of authorization as an essential element of a Section 841 charge against a medical doctor. That's clear from this court's opinion in Hurwitz in Footnote 7. And under Hayward, it's error for a district court not to advise the defendant of the mens rea element that applies to an essential element. Let's focus on the facts that supported the plea of guilty. I assume the prosecutor either presented it in writing, as you do here in the Eastern District of Virginia, or orally recited it on the record. Did the defendant object at all to the prosecution's discussion and detailing of the facts? I mean, he was confronted with it at that time. Did he speak up and say, no, your honor, that element of the government statement of facts is not true? The defendant, at the end of the first change of plea hearing after the court, after the government had gone through the facts, he stopped the hearing and said, I'm not guilty. I didn't do this. That was initially. That was initially. He didn't raise specific objections during the factual recitation at the second change of plea hearing. So when the court accepted his plea of guilty and the government introduced the statement of facts, he offered no objection. That's correct. He didn't object to the facts stated. But the facts, the facts today are no different than the facts were. They are no more overwhelming than the facts were at his first change of plea hearing, where he stopped the hearing and he said, I didn't do this willfully. And he wasn't sure if he was guilty or not. And so the standard here is not to show that second time. Well, he hadn't been instructed that the government would have to prove his intent with regard to acting without authorization. And with regard to the way that the district court set out the elements in this case, it's the same. The district court explained the elements of the Section 841 charge in the same way that the district court did in the Ruan case. And in the remand decision, the Ruan, the 11th Circuit held that that was inconsistent with with the Supreme Court's decision in Ruan because the district court there didn't apply the mens rea element to the acting without authorization. So you disagree with the government's reading of the court's instruction, page 73? Yes, I disagree that that applies the mens rea to acting without authorization. And one point with regard to how the court discussed the elements, the government talks about the court's instruction on count four, which is on page 73. But the court actually uses slightly different language when it goes through counts four, eight, 11, and 14. It doesn't have the that, which the government relies on heavily. It uses slightly different language. But every time it says knowing and intentional after the distribution and does not apply that to the acting without authorization. And that's the same way that the court set out the elements in the Ruan case, which the 11th Circuit held on remand was inconsistent with Ruan. And the government doesn't dispute that there's a change in the law. And under the Fourth Circuit's cases before Ruan, in particular, in the Hurwitz case, you can see the court lays out the elements there. It doesn't apply the mens rea to the acting without authorization element. And the court's instructions here were consistent with the law at the time. And they were inconsistent with the law now after Ruan. Anything else? No, Your Honor. If the court has no further questions, we'd ask the court to vacate Mr. Kim's convictions because there's a reasonable probability he would have gone to trial if he had not been informed. And if I may, Your Honor, I do just want to represent it's my understanding that Mr. Kim would take this case to trial if the court vacated his convictions based on a reminder. Thank you. All right. We'll come down and greet counsel and then take a very short recess. This honorable court will take a brief recess.
judges: G. Steven Agee, William B. Traxler Jr., Henry E. Hudson